UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

American Bank of St. Paul,

                Plaintiff,                    **MEMORANDUM OPINION
AND ORDER**
      v.                                 Civil No. 09-2240 ADM/TNL

TD Bank, N.A.,

                Defendant.

_____

Eric J. Nystrom, Esq., Anthony N. Kirwin, Esq., Daniel N. Sacco, Esq., John C. Ekman, Esq., and William P. Wassweiler, Esq., Lindquist & Vennum PLLP, Minneapolis, MN, on behalf of Plaintiff.

Alan L. Kildow, Esq., Jeffrey E. Mitchell, Esq., and Sonya R. Braunschweig, Esq., DLA Piper LLP, Minneapolis, MN and San Francisco, CA, and Eric S. Golden, Esq., Howard S. Marks, Esq., and Joe A. Joseph, Esq., Burr & Forman LLP, Orlando and Winter Park, FL and Birmingham, AL, on behalf of Defendant.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiff[1]

---

[1] Plaintiff American Bank originally filed this suit in its own right as a plaintiff. Because American Bank sought relief on behalf of other banks, this Court's May 9, 2011 Order [Docket No. 109] required American Bank to seek ratification from the other participating banks in the Participation Agreement. American Bank received ratification from the participant banks which include: Alerus Financial Corporation; Bank of Hazelton; Border State Bank; Dakota Western Bank; First State Bank & Trust; Republic Bank; Ridgedale State Bank (n/k/a Highland Bank); American State Bank & Trust Company of Williston; Bank of Bozeman; Border Trust Company; Crown Bank; Farmers & Merchants State Bank of Pierz; Farmers & Merchants State Bank of Tolna; First International Bank & Trust; First National Bank in Wadena; First Security Bank of Canby; First State Bank; Forreston State Bank; Frontier Bank; Integrity Bank; Security State Bank of North Dakota (n/k/a Bank Forward); State Bank in Eden Valley; United Minnesota Bank; United Prairie Bank Springfield; and Wadena State Bank. For clarity and ease of reference, this Order will refer to them collectively as the "participating banks."

American Bank of St. Paul's ("American Bank") Motion to Alter or Amend the Judgment [Docket No. 271] ("Pl.'s Mot. to Amend") and Supplemental Motion to Alter or Amend the Judgment [Docket No. 275] ("Pl.'s Supp. Mot."). Also before this Court is Defendant TD Bank, N.A.'s ("TD Bank") Motion in Support of Judgment as a Matter of Law [Docket No. 278] ("Def.'s Summ. J. Mot."). For the reasons set forth below, Defendant's Motion is denied, Plaintiff's Motion to Amend is denied, and Plaintiff's Supplemental Motion is granted in part.

## II. BACKGROUND

On August 26, 2009, Plaintiff filed a Complaint [Docket No. 1] alleging Defendant committed fraud by omission, fraud, civil conspiracy to commit fraud, common law aiding and abetting, breach of the duty of good faith and fair dealing, and breach of contract. In March 2010, Plaintiff filed an Amended Complaint [Docket No. 44] adding punitive damages. This Court dismissed most of Plaintiff's claims on Defendant's motion for summary judgment, leaving only civil conspiracy to commit fraud and common law aiding and abetting as triable issues. May 9, 2011 Order.

The trial began on November 7, 2011 and concluded with a verdict on December 1, 2011. Testimony from 37 witnesses was heard, and 139 exhibits out of 1489 proposed exhibits were admitted into evidence. The jury verdict found in favor of the participating banks on both remaining claims. Judgment [Docket No. 269] 1. The jury awarded damages to the participating banks in the amount of $13,557,900.50, id., but declined to award punitive damages in the second stage of the bifurcated trial. Judgment was entered on December 13, 2011. Id. Plaintiff filed its Motion to Amend on December 23, 2011, and its Supplemental Motion on January 9, 2012. Defendant filed its Motion for Summary Judgment on January 10, 2012.

### III.  DISCUSSION

**A.  Plaintiff's Motion to Amend or Alter the Judgment**

Plaintiff's Motion to Amend requests that this Court amend the judgment by increasing the jury's damage award.  Rule 59(e) of the Federal Rules of Civil Procedure permits a motion to alter or amend a judgment.  District courts have broad discretion in determining whether to amend their own judgment.  Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998).  Such motions are to be granted sparingly because of the interest in finality and conservation of scarce judicial resources.  Pa. Ins. Guar. Ass'n v. Trabosh, 812 F.Supp. 522, 524 (E.D.Pa. 1992).  A motion to amend serves "the limited function of correcting manifest errors of law or fact or to present newly discovered evidence."  United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (internal quotations omitted).

A motion to amend a court's judgment which seeks increased damages is sharply constrained by the Seventh Amendment, which guarantees trial by jury and thereby prohibits a federal court from increasing a jury verdict through additur.  See Novak v. Gramm, 469 F.2d 430, 432–33 (8th Cir. 1972).  While remittitur does not violate the Seventh Amendment, "an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict."  Dimick v. Schiedt, 293 U.S. 474, 486 (1935).

Plaintiff avers that the jury impermissibly reduced its damages from the entire amount of loss, $27,137,550, to the awarded $13,557,900.50.  Plaintiff contends that the damages were undisputed, and because the jury found Defendant fully liable on both counts this Court should therefore increase the judgment as a matter of law.  Plaintiff cites several cases from other jurisdictions in its support.

Decato v. Travelers Ins. Co., 379 F.2d 796, 798 (1st Cir. 1967) ("[T]he constitutional rule against additur is not violated in a case where the jury has properly determined liability and there is no valid dispute as to the amount of damages.") (internal citation omitted) (footnote omitted); Liriano v. Hobart Corp., 170 F.3d 264, 272–73 (2d Cir. 1999) (finding it permissible for a district court to increase a damage award where it "did not divine a figure and then make the defendants choose between an increased damage award and a new trial" but "simply adjusted the jury award to account for a discrete item that manifestly should have been part of the damage calculations and as to whose amount there was no dispute").

The Eighth Circuit Court of Appeals, however, has not adopted this legal theory. Rather, the Eighth Circuit has stated that, "If . . . . the issue of damages was an issue of fact for the jury, as the parties and the court obviously thought it was when the case was submitted, the court was unquestionably without power to increase the judgment entered on the jury's verdict." Milprint, Inc. v. Donaldson Chocolate Co., 222 F.2d 898, 901 (8th Cir. 1955). Here, the issue of damages was a question of fact for the jury. The Special Verdict Form, to which neither Plaintiff nor Defendant objected, specifically allowed the jury the opportunity to award damages in any amount up to the maximum $27,137,550. See Special Verdict Form [Docket No. 262] § 11 (asking the jury to determine "what amount of compensatory damages, if any, are each of the banks entitled to receive") and § 29 ("In deciding damages, decide the amount of money that will fairly and adequately compensate American Bank and/or each participating bank for the damages directly caused by relying on Louis Pearlman's misrepresentation."). No manifest error of law or fact occurred. In fraud claims, the misrepresentation must be the proximate cause of the damages. See Martens v. Minn. Min. & Mfg.

Co., 616 N.W.2d 732, 747 (Minn. 2000). Although the jury found that each participating bank's reliance was reasonable and that Defendant was liable, the jury had the discretion to determine which participating banks relied on the misrepresentation.[2] The jury could have determined that the participating banks' reasonable reliance only caused some of their damage and therefore only awarded partial damages. Here, where the issue of damages hinged on whether the participating banks reasonably relied on the misrepresentations and whether that reliance caused the alleged damages, the issue of damages was a fact for the jury and cannot now be overturned by this Court.

**B. Plaintiff's Supplemental Motion to Amend or Alter the Judgment**

Plaintiff also filed a Supplemental Motion requesting that this Court award prejudgment interest in one of the following fashions: (1) prejudgment interest calculated on the full $27,137,550 from the date the damages became liquidated, December 1, 2006, until December 13, 2011; (2) prejudgment interest calculated on the jury award of $13,557,900.50 from December 1, 2006, to December 13, 2011; or (3) prejudgment interest calculated on $13,557,900.50 from the date the Complaint was filed, August 26, 2009, until December 13, 2011. Defendant rejects the argument that Plaintiff is entitled to any prejudgment judgment but contends that, at the most, Plaintiff's prejudgment interest must be based on Defendant's most recent settlement offer because it was closest to the eventual verdict.

In Minnesota, prejudgment interest on liquidated or sum-certain claims can be awarded from the date the claims first arose. ICC Leasing Corp. v. Midwestern Mach. Co., 257 N.W.2d 551, 556

---

[2] While representatives from American Bank, Alerus Financial Corporation, Bank of Hazelton, Border State Bank, Dakota Western Bank, First State Bank & Trust, Republic Bank and Ridgedale State Bank (n/k/a Highland Bank) testified, the parties stipulated to the testimony of the remaining nineteen banks. See Court Exhibit List [Docket No. 270] Ex. 1 ("Stipulation").

(Minn. 1977) ("[W]here a claim is unliquidated but is readily ascertainable by computation or by reference to generally recognized objective standards of measurement, interest should be allowed the same as for a liquidated claim."). Where the damages are not liquidated and not readily ascertainable, Minnesota law requires that prejudgment "interest on pecuniary damages shall be computed . . . from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first." Minn. Stat. § 549.09, subd. 1(b); see also Simeone v. First Bank Nat'l Ass'n, 73 F.3d 184, 191 (8th Cir. 1996) (quoting Lienhard v. State, 431 N.W.2d 861, 865 (Minn. 1988)) (stating that Minn. Stat. § 549.09 permits prejudgment interest "irrespective of a defendant's ability to ascertain the amount of damages for which [it] might be held liable"). The statute clearly dictates that the prevailing party "shall receive interest" on any award, with few limited exceptions. Id. "If either party serves a written offer of settlement, the other party may serve a written acceptance or a written counteroffer within 30 days," and "[s]ubsequent offers and counteroffers supersede the legal effect of earlier offers and counteroffers." Minn. Stat. § 549.09, subd. 1(b). When judgments are over $50,000, the interest rate is ten percent each year until paid. Minn. Stat. § 549.09, subd. 1(c)(2).

Defendant argues that this Court should calculate the prejudgment interest from its final offer of November 11, 2011. See Braunschweig Aff. [Docket No. 284] Ex. 2. This final settlement offer came during the jury trial, and it failed to include several participating banks — American Bank of St. Paul, Republic Bank, First State Bank of Bayport, and Alerus Financial "[t]o the extent [its representative] testifies [on November 11, 2011] . . . ." Id. Since "the purpose of [Minn. Stat. § 549.09] is to promote settlement, [and] this is best accomplished by penalizing the party who fails to

respond to a settlement overture . . . .", Hodder v. Goodyear Tire & Rubber Co., 426 N.W.2d 826, 841 n.17 (8th Cir. 1988), Plaintiff's failure to make a counteroffer does not remove this settlement offer from the purview of Minn. Stat. § 549.01(1)(b).  However, because the Minnesota legislature's purpose was to promote settlement and final resolution of cases, "[v]alid offers . . . must offer, in sufficiently clear and definite terms, to dispose completely the claims between the negotiating parties." Hodder, 426 N.W.2d at 840.  Because Defendant's settlement offer failed to include several participating banks,[3] and therefore could not completely dispose of the claim, its offer was not a valid offer under Minn. Stat. § 549.01(1)(b) and prejudgment interest will not be calculated based on that sum.

Plaintiff's argument that prejudgment interest should be calculated from the time the damages became liquidated and on the total $27,137,550 is unpersuasive.  The traditional rule in Minnesota, which predates Minn. Stat. § 549.09(1)(b) and which continues to be applied,[4] permits prejudgment interest on liquidated claims and on unliquidated claims except when they are "not readily ascertainable by computation or by reference to generally recognized standards, or where the amount of the claim is dependent in whole or in part upon the discretion of the jury." Clements Auto Co. v. Service Bureau Corp., 444 F.2d 169, 189 (8th Cir. 1971).  Damages are liquidated when they arise out of a breach of contract claim.  See St. Jude Med., Inc. v. Medtronic, Inc., 536 N.W.2d 24, 28 (Minn. Ct. App.

---

[3]Defendant's settlement offer conspicuously failed to include the lead bank in this case, American Bank, and it declined to make an offer to the two participating banks alleging the most damages — American Bank ($4,759,926) and Republic Bank ($3,799,257).

[4]Minn. Stat. § 549.09, subd. 1(b) applies "[e]xcept as otherwise provided by contract or allowed by law," specifically recognizing the traditional rule regarding unliquidated claims.

1995) ("A liquidated damages analysis is inappropriate here, however, because this case lacks the breach of contract necessary to invoke such analysis."). Damages in this case are not liquidated because they do not arise out of a breach of contract claim. Although Plaintiff alleged a breach of contract claim in its Complaint, this Court dismissed that cause of action in its May 9, 2011 Order, and the damages arising from the conspiracy and aiding and abetting claims were not contractual in nature and therefore not liquidated.

The unliquidated damages here were also dependent upon the discretion of the jury,[5] see Special Verdict Form § 11, so the prejudgment interest cannot be calculated on the $27,137,550 Plaintiff requested. Because the damages were not liquidated or readily ascertainable prior to the filing of Plaintiff's Complaint, the prejudgment interest is calculated under Minn. Stat. § 549.09. Plaintiff did not serve Defendant with a written notice of claim, so the prejudgment interest is properly calculated from the time of the commencement of the action, August 26, 2009,[6] until the verdict was awarded, December 1, 2011, on the amount of the jury award, $13,557,900.50, at ten-percent interest under Minn. Stat. § 549.09, subd. 1(c). The total amount of prejudgment interest to which Plaintiff is entitled

---

[5]Notably, Plaintiff's Complaint and Amended Complaint both requested actual damages in excess of $36,000,000; this also suggests that the unliquidated damages were not readily ascertainable.

[6]Defendant avers that Plaintiff cannot seek prejudgment interest from the commencement of the action because they had initially asserted claims on behalf of other banks and on loans to which they were not the real party in interest. This issue has already been discussed in this Court's May 9, 2011 Order, when Plaintiff was allowed a "reasonable time after objection" for ratification of the participating banks because no showing of undue prejudice had been made by Defendant. Id. at 22. Because the participating banks all ratified, the date of the original filing of the action — August 26, 2009 — is the proper date for calculating prejudgment interest.

is $3,075,600.44.[7]

**C. Defendant's Motion for a New Trial**

Defendant requests that this Court grant its motion for judgment as a matter of law or, alternatively, a new trial or an amended judgment. Defendant argues that Plaintiff failed to prove Defendant had actual knowledge of the fraud and substantially assisted that fraud, that Plaintiff's reliance was not proven reasonable, that inadmissible evidence was permitted in court and admissible evidence was excluded, and that the jury instructions were erroneous. The decision whether to grant a new trial under Federal Rule of Civil Procedure 59(a) is committed to the discretion of the district court. Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1995). "A new trial is required only when necessary to avoid a miscarriage of justice." Gearin v. Wal-Mart Stores, Inc., 53 F.3d 216, 219 (8th Cir. 1994) (citation omitted). "While the standard for granting a new trial is less stringent than for judgment as a matter of law, a new trial shall be granted only to prevent injustice or when the verdict strongly conflicts with the great weight of evidence." Maxwell v. Baker, Inc., 160 F.R.D. 580, 581 (D. Minn. 1995). Similar to the standard for granting judgment as a matter of law, a district court reviewing a motion for a new trial is "not free to reweigh the evidence and set aside the jury verdict merely

---

[7]

| YEAR | AMOUNT | RATE | DAYS | TOTAL |
|------|--------|------|------|-------|
| 2009 | $13,557,900.50 | .1 | 128 | $475,455.14 |
| 2010 | $13,557,900.50 | .1 | 365 | $1,355,790.05 |
| 2011 | $13,557,900.50 | .1 | 335 | $1,244,355.25 |
| | | | GRAND TOTAL= | $3,075,600.44 |

because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Fireman's Fund Ins. Co. v. Aalco Wrecking Co., 466 F.2d 179, 186 (8th Cir. 1972) (quoting Tennan v. Peoria & Pekin Union Ry., 321 U.S. 29, 35 (1944)).

### 1. Substantial Assistance

Defendant specifically argues that its participation in the Participation Agreement and its forbearance on Lou Pearlman's loans do not constitute "substantial assistance," citing for support a case from the Second Circuit, In re Sharp Int'l Corp. v. State Street Bank, 403 F.3d 43 (2d Cir. 2005). While the Sharp court did hold that forbearance was insufficient to constitute substantial assistance, that reasoning is neither binding nor persuasive here. Defendant did more than merely forebear on the loan; the evidence showed that Defendant affirmative entered into the Participation Agreement, which enabled it to close and the fraud to occur. Coupled with the forbearance, it was not unjust or in conflict with the evidence for the jury to determine that Defendant substantially assisted the fraud. Moreover, Defendant's argument that the jury could not have found they had actual knowledge of the fraud also fails. The testimony and evidence presented at trial was sufficient for a jury to find Defendant had actual knowledge of Pearlman's fraud.

### 2. Reasonable or Justifiable Reliance

Defendant's argument that Plaintiff's reliance was not proven reasonable or justifiable does not pass muster. The jury was presented evidence about the participating banks' due diligence, evidence that information about Pearlman and Transcontinental Airlines ("TCA") were publicly available, and evidence about what each bank did or did not do prior to engaging in the Participation Agreement. Given this evidence, no miscarriage of justice occurred when the jury concluded that Plaintiff relied on

Pearlman's fraudulent statements in the Offering Memorandum and that Plaintiff's reliance was justifiable or reasonable. Accordingly, the jury verdict will not be overturned or retried on this issue.

### 3. Evidentiary Rulings

Defendant's contentions that evidentiary determinations require a new trial are unavailing. Trial courts have "broad discretion in determining the relevancy and admissibility of evidence." United States v. Watson, 650 F.3d 1084, 1089 (8th Cir. 2011) (citation omitted). These evidentiary rulings were decided throughout the course of the trial and the Court rests on its rulings and rationale as set forth in the court transcript.[8] In summary, though, the post-loan emails and evidence to which Defendant objects reflected Defendant's state of mind at the time of the Participation Loan, were more relevant than prejudicial, and were therefore admissible. Similarly, the Legg email was admissible because it was relevant and not unfairly prejudicial. The transcript of Pearlman's hearing was properly excluded because it was not relevant, lacked foundation, and was hearsay. Les Alexander's expert testimony was properly excluded to the extent it dealt with post-closing evidence, because such evidence was unfairly prejudicial and not relevant. Also properly excluded was Galen Clements' testimony relating to what a full fraud investigation would have entailed, given that the testimony lacked relevance and was unfairly prejudicial. The Court accordingly affirms its evidentiary rulings and will not grant a new trial on this basis.

### 4. Jury Instructions

Defendant argues that the jury instructions were clearly erroneous. A new trial may be ordered

---

[8] The entire transcript has not yet been made available on CM/ECF.

if the court erred in instructing the jury on the applicable law. T.H.S. Northstar Assocs. v. W.R. Grace & Co.-Conn., 860 F. Supp. 640, 650 (D. Minn. 1994), vacated on other grounds, 66 F.3d 173 (8th Cir. 1995).  A district court, however, has broad discretion in framing instructions and "need not give every proposed instruction as long as the court adequately presents the law and the issues to the jury." Fleming v. Harris, 39 F.3d 905, 907 (8th Cir. 1994).  Moreover, the instructions are to be considered "in their entirety to determine whether, when read as a whole, the charge fairly and adequately submits the issues to the jury."  Laubach v. Otis Elevator Co., 37 F.3d 427, 429 (8th Cir. 1994).  "A single erroneous instruction will not necessarily require reversal."  Id.

Defendant avers that Jury Instruction No. 23 was clearly erroneous because it failed to include the language "blind reliance" and instead stated, "[R]eliance is unreasonable or not justifiable when a business relies on a representation it knows to be false or is obviously false." Jury Instructions [Docket No 260] 25.  Defendant cites Mitec Partners, LLC v. U.S. Bank Nat'l Ass'n, 605 F.3d 617 (8th Cir. 2010), which states that the victim of fraud cannot recover if it "blindly relies on a misrepresentation the falsity of which would be patent to [it] if [it] had utilized [its] opportunity to make a cursory examination or investigation."  Id. at 623 (citation omitted).  However, the words "blind reliance" are not required for a jury instruction, and the given instruction sufficiently and accurately reflects the law on reasonable or justifiable reliance.

Defendant also takes issue with Jury Instruction No. 26, stating that the instruction was clearly erroneous for failing to provide additional instructions about "actual knowledge."  Defendant states that it was vital for the jury to be instructed that "suspicions," "red flags," and hindsight evaluations are not actual knowledge.  The Court adheres to the validity of its instructions.  Constructive knowledge was

not at issue in this trial, so lengthy explanations about "actual knowledge" would not have been helpful to the jury. Moreover, the elements of substantial assistance and actual knowledge are analyzed together on a sliding scale,[9] so further definition would have been likely to mislead or confuse the jury as to the amount of knowledge required. For all these reasons, the jury instructions were not erroneous and do not warrant a new trial.

The jury heard counsel's arguments and weighed the evidence. The jury's final determination that TD Bank had actual knowledge of the fraud and substantially assisted that fraud, as well as that Plaintiff's reliance was reasonable, is supported by the weight of the evidence. The jury also properly exercised its fact-finding role in determining the amount of damages. The jury's verdict is fair and just.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. American Bank's Motion to Alter or Amend the Judgment [Docket No. 271] is **DENIED**;

2. American Bank's Supplemental Motion to Alter or Amend the Judgment [Docket No. 275] is **GRANTED**;

3. American Bank is awarded $3,075,600.44 in prejudgment interest; and

---

[9]In pertinent part, Jury Instruction No. 26 states that "a greater showing of knowledge on the part of [Defendant] of the details of Pearlman's fraudulent conduct towards [Plaintiff] and/or the participating banks, and [Defendant's] role within that conduct, requires a lesser showing of substantial assistance. On the other hand, a greater showing of substantial assistance requires a lesser showing of knowledge." Id. at 28.

4.  TD Bank's Motion in Support of Judgment as a Matter of Law [Docket No. 278] is

**DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 6, 2012.